

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2000

# St Thomas St John Hotel Tourism, Inc. v. Govt of VI

Precedential or Non-Precedential:

Docket 99-3513

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"St Thomas St John Hotel Tourism, Inc. v. Govt of VI" (2000). *2000 Decisions*. Paper 140.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/140

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 30, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 99-3513, 99-3563

THE ST. THOMAS - ST. JOHN HOTEL & TOURISM
ASSOCIATION, INC.; THE ST. THOMAS - ST. JOHN
CHAMBER OF COMMERCE, INC.; ST. CROIX HOTEL &
TOURISM ASSOCIATION, INC.

v.

GOVERNMENT OF THE UNITED STATES VIRGIN
ISLANDS, by and through the Virgin Islands Department
of Labor; ELEUTERIA ROBERTS, in her official capacity
as Acting Commissioner of the Virgin Islands Department
of Labor,
        Appellants in No. 99-3563

Elsa Huggins; Ladiah Whyte,
Intervenors/Appellants in No. 99-3513

On Appeal from the District Court of the Virgin Islands
(D.C. No. 99-cv-00054)
District Judge: Hon. Thomas K. Moore

Argued: October 22, 1999

Before: SLOVITER and RENDELL, Circuit Judges,
and BYRNE, District Judge*

_____

*Hon. Wm. Matthew Byrne Jr., United States District Court for the
Central District of California, sitting by designation.

(Filed: June 30, 2000)

Iver A. Stridiron
Pamela R. Tepper
Carol S. Moore
Department of Justice
St. Thomas, USVI 00802

 Attorneys for Appellants
 in No. 99-3563


Scott A. Kronland
Altshuler, Berzon, Nussbaum
 Berzon & Rubin
San Francisco, CA 94108

Jonathan P. Hiatt
Washington, D.C. 20006

Richard Austin
Kathleen Navin (Argued)
Legal Services of Virgin Islands, Inc.
Christiansted, St. Croix, USVI 00820

 Attorneys for
 Intervenors/Appellants
 in No. 99-3513

Charles E. Engeman (Argued)
Dudley, Topper & Feuerzeig
Charlotte Amalie, St. Thomas,
  USVI 00804

 Attorney for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

INTRODUCTION

Before us is an appeal from the order of the District Court granting a preliminary injunction enjoining enforcement of the Virgin Islands Wrongful Discharge Act (WDA or "Act"), V.I. Code Ann. tit. 24, SS 76-79, a territorial law that declares that an employee discharged for any reason other than for cause as set forth in nine enumerated reasons "shall be considered to have been wrongfully discharged," unless modified by a union contract. The central issue is the District Court's holding that the

plaintiffs have a probability of success on the merits on their claim that the WDA is preempted by the National Labor Relations Act (NLRA), 29 U.S.C. SS 151-169. The Government of the Virgin Islands and two intervening employees who have claims pending under the WDAfiled appeals, which we consolidated.

We have jurisdiction over the appeal from the grant of the preliminary injunction pursuant to 28 U.S.C. S 1292(a)(1). Although the issuance of a preliminary injunction is reviewed for abuse of discretion, the underlying legal determination regarding preemption is reviewed de novo. Acierno v. New Castle County, 40 F.3d 645, 652 (3d Cir. 1994).

II.

BACKGROUND

A.

The Virgin Islands Wrongful Discharge Act

Section 76 of the WDA, enacted by the Virgin Islands legislature in 1986, sets forth the grounds for lawful employee discharge as follows:

(a) Unless modified by union contract, an employer may dismiss any employee:

(1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;

(2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

(3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

(4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

(5) who performs his work assignments in a negligent manner;

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

4

    (b) The Commissioner may by rule or regulation adopt
    additional grounds for discharge of an employee not
    inconsistent with the provisions enumerated in
    subsection (a) of this section.

    (c) Any employee discharged for reasons other than
    those stated in subsection (a) of this section shall be
    considered to have been wrongfully discharged;
    however, nothing in this section shall be construed as
    prohibiting an employer from terminating an employee
    as a result of the cessation of business operations or as
    a result of a general cutback in the work force due to
    economic hardship, or as a result of the employee's
    participation in concerted activity that is not protected
    by this title.

V.I. Code Ann. tit. 24, S 76.

Any employee covered by the WDA and discharged in
violation of S 76 may file an administrative complaint with
the Commissioner of Labor, who has the authority to order
reinstatement and back pay. See V.I. Code Ann. tit. 24,
S 77. In addition, the employee may file a lawsuit for
compensatory and punitive damages in any court of
competent jurisdiction. See V.I. Code Ann. tit. 24, S 79.

As originally enacted, the text of S 76 began, "Unless
modified by contract . . . ." In 1991, the Virgin Islands
Department of Labor defined the term "contract" as a
"written agreement negotiated between an employer and an
employee, or representatives thereof, which contains the
specific grounds for discharge, where the employment
relationship has an established mechanism or procedure
for resolving discharge grievances and this mechanism or
procedure is referred to in the agreement or is otherwise
known by the parties, such as a collective bargaining
agreement." V.I.R. & Regs. tit. 24, S 77-1(E). Expressly
excluded from that definition were printed statements on
an application for employment, in employee manuals, or in
statements of employers' rules. Id. However, in its
administrative rulings, the Department later relaxed the
definition by holding that the Department was deprived of
jurisdiction under the WDA if an employee agreed in any
contract, even an application for employment, that s/he

5

was an at-will employee. This interpretation permitted the employer to remove the protection of the Act by contracting with one or more individual employees.

In 1996, the Virgin Islands legislature amended S 76(a) to begin, "Unless modified by union contract . . .." See V.I. Code Ann. tit. 24, S 76(a). Since that time, S 76(a) has been interpreted to apply to all employees in the Virgin Islands, absent a collective bargaining agreement setting discharge terms to the contrary.

B.

Procedural Background

The District Court that issued the preliminary injunction in this case had previously considered the same issue in Bell v. Chase Manhattan Bank, 40 F. Supp. 2d 307 (D.V.I. 1999), a suit brought by a former employee alleging that she was discharged in violation of the WDA. The court held in Bell that the WDA was preempted by the NLRA and dismissed the employee's WDA action on that ground. Soon thereafter, the Department of Labor postponed all hearings then scheduled under the WDA. After a public hearing held by the Virgin Islands legislature on March 15, 1999, however, the Department of Labor announced that it would reschedule all hearings. The first hearing was rescheduled to commence on April 6, 1999.

On April 5, 1999, the St. Thomas-St. John Hotel & Tourism Association, Inc., the St. Thomas-St. John Chamber of Commerce, Inc., and the St. Croix Hotel & Tourism Association, Inc. (collectively "the associations") filed this action in the District Court of the Virgin Islands seeking to restrain the enforcement of the WDA in any pending or future WDA wrongful discharge proceeding. The associations, relying on the District Court's earlier decision in Bell, alleged that the WDA was preempted by the NLRA and contended that enforcement of the Act deprived them of federal rights in violation of 42 U.S.C. S 1983. They sought declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. SS 2201, 2202, as well as injunctive relief under 42 U.S.C. S 1983 and attorneys'

fees under 42 U.S.C. S 1988 and V.I. Code Ann. tit. 5, S 541.

The associations are three not-for-profit corporations that represent the interests of more than 800 employers on the islands of St. Thomas, St. John, and St. Croix in the Virgin Islands. Together, their members employ over 12,000 employees in the Virgin Islands. The associations named as defendants the Government of the Virgin Islands, the Department of Labor, and the Acting Commissioner of the Department of Labor (collectively "the government"). Elsa Huggins and Ladiah Whyte, two employees who have WDA claims pending before the Virgin Islands Department of Labor, intervened as additional defendants.

The associations sought a preliminary injunction against the Virgin Islands Department of Labor, prohibiting it from holding any preliminary or formal hearings under the WDA. After a hearing, the District Court, adopting its earlier reasoning in Bell, concluded that the associations were likely to succeed on the merits of their preemption arguments and issued the requested preliminary injunction. St. Thomas-St. John Hotel & Tourism Assoc., Inc. v. Government of the United States Virgin Islands , Civ. No. 1999-54 (D.V.I. June 2, 1999) (hereafter "slip op."). The court believed that the WDA is "directly" preempted by S 7 of the NLRA "because it requires union involvement before any contractual modification to the WDA's requirements," and also preempted because "it upsets the `balance of power' between labor and management in an area Congress intended to remain free [from regulation]." Slip op. at 6.

The court's order permitted the Department of Labor to continue to accept complaints and to encourage voluntary mediation, and to hold formal hearings for employees who are not covered by the NLRA. It also required the associations to post a bond in the amount of $25,000 to cover losses to any employee who may ultimately be awarded back pay under the WDA and is unable to recover from the former employer. In their appeal, the government and intervening employees argue that the District Court erred as a matter of law in its determination that the WDA was preempted.

7

III.

DISCUSSION

A.

Preemption Principles

An understanding of the principles of preemption is necessary background for all of the issues raised, including the appellants' challenge to standing, a jurisdictional issue. Preemption derives from the Supremacy Clause of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Those principles are made applicable to the laws of the Virgin Islands through the Revised Organic Act, which authorizes the Virgin Islands legislature to enact territorial laws that are "not inconsistent with . . . the laws of the United States made applicable to the Virgin Islands." 48 U.S.C. S 1574(a).

The NLRA, "a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce," Nash v. Florida Industrial Comm'n, 389 U.S. 235, 238 (1967), expressly applies to the Virgin Islands, a territory of the United States. See 29 U.S.C. S 152(6). Accordingly, we must apply the preemption principles as articulated by the Supreme Court of the United States. See, e.g., Abdullah v. American Airlines, Inc., 181 F.3d 363 (3d Cir. 1999) (applying general preemption principles to determine whether application of territorial law was preempted by the Federal Aviation Act).

The Supreme Court has recognized three general ways in which federal law may preempt, and thereby displace, state law: (1) "express preemption," which arises when there is an explicit statutory command that state law be displaced, see Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992); (2) "field preemption," which arises when federal law "so thoroughly occupies a legislative field as to make

8

reasonable the inference the Congress left no room for the States to supplement it," Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (internal quotations omitted); and (3) "conflict preemption," which arises when a state law makes it impossible to comply with both state and federal law or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz , 312 U.S. 52, 67 (1941).

Because the NLRA contains no express preemption provision, and because the NLRA regulates in an area of law traditionally regulated by the states, any NLRA preemption analysis starts "with the basic assumption that Congress did not intend to displace state law." Building and Constr. Trades Council v. Associated Builders and Contractors of Mass./R.I., 507 U.S. 218, 224 (1993) (quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981)).1 Nonetheless, although the NLRA neither contains an express preemption provision nor indicates a congressional intent to usurp the entire field of labor-management relations, courts have often found state laws impliedly preempted by conflict with the NLRA, its express provisions as well as its underlying goals and policies, on the ground that the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives" of Congress. See, e.g., Livadas v. Bradshaw, 512 U.S. 107, 120, 134-35 (1994) (holding a state policy preempted by conflict with employee's right, implicit in the structure of the NLRA, to "complete the collective bargaining process and agree to an arbitration clause"); Nash, 389 U.S. at 238-40 (holding a state policy preempted

_____

1. The associations argue that this assumption does not apply here because the WDA is a territorial law rather than a state law and, therefore, does not raise a problem of "dual sovereignties." Appellees' Brief at 10. We see no reason to alter our preemption analysis, which is premised on the purpose of Congress in enacting the NLRA, based on a distinction between the legislative power of the Virgin Islands and that of the states, nor have we seen such reason in the past. See Peter v. Hess Oil V.I. Corp., 903 F.2d 935, 937 n.1 (3d Cir. 1990) ("For purposes of our [preemption] analysis, the Virgin Islands stands in no different position than would a state.").

by conflict with the NLRA because "Congress has made it clear that it wishes all persons with information about [unfair labor practices] to be completely free from coercion against reporting them to the Board").

Although the general preemption principles "are no less applicable in the field of labor law," Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54, 468 U.S. 491, 501 (1984), two unique subspecies of preemption, commonly known as Garmon preemption and Machinists preemption, are often invoked in connection with the NLRA. Garmon preemption, which derives from San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), protects the primary jurisdiction of the National Labor Relations Board (NLRB) by displacing state jurisdiction over conduct which is "arguably within the compass of S 7 or S 8 of the Act." Id. at 246. The doctrine is based on an "overriding interest in a uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress," rather than on federal protection of particular conduct of private bargaining parties. New York Tel. Co. v. New York State Dept. of Labor, 440 U.S. 519, 528 (1979) (plurality opinion). Because Garmon preemption concerns cases which "arguably" fall within the NLRA, a determination of whether state jurisdiction is displaced under Garmon preemption may require a consideration of the strength of the state's interest in its regulation over the relevant conduct. See Brown, 468 U.S. at 502–03.

In contrast to Garmon preemption, Machinists preemption, derived from Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976), is premised on congressional intent that certain conduct of private bargaining parties be unregulated. Machinists preemption can be described as a form of conflict preemption under which state regulation of the bargaining conduct of private parties is displaced because it conflicts with the purpose of Congress in enacting the NLRA to leave that conduct "to be controlled by the free play of economic forces." Id. at 140. 2 Although "[a]n

_____

2. As we have noted elsewhere, the distinction between conflict preemption and field preemption is "not necessarily airtight." Orson, Inc.,

10

appreciation of the State's interest in regulating a certain kind of conduct may . . . be relevant in determining whether Congress in fact intended the conduct to be unregulated," because the doctrine of Machinists preemption is premised solely on congressional intent that an area of conduct be unregulated, an analysis under this doctrine does not require a balancing of the state and federal interests in the first instance. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 749 n.27 (1985).

A brief summary of the underlying facts in Machinists sheds light on the types of state regulation that are preempted under the doctrine. During negotiations for renewal of an expired collective-bargaining agreement, the employer sought and the union resisted an increase of the basic workweek from 37 to 40 hours. After a vote of the membership, the union instructed its members to refuse to work more than 37 hours. While negotiations continued, the employer filed a charge with the NLRB seeking a determination that the union's action was an unfair labor practice prohibited by S 8 of the NLRA. The NLRB dismissed the charge, finding that the union's conduct did not violate any provision of the NLRA. The employer also filed a complaint with the Wisconsin Employment Relations Commission, charging that the refusal to work overtime constituted an unfair labor practice under state law. The state Commissioner granted an injunction that the union cease and desist encouraging the employees' concerted refusal to accept overtime assignments. This injunction was subsequently upheld by the state courts.

The United States Supreme Court reversed. Drawing from earlier decisions, the Court held that even though the employees' concerted refusal to work overtime was neither prohibited nor protected under specific provisions of the

_____

v. Miramax Film Corp., 189 F.3d 377, 382 (3d Cir. 1999). "Indeed, field pre-emption may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." English v. General Elec. Co., 496 U.S. 72, 79 n. 5 (1990). The overlap is evident in Machinists preemption, which recognizes an area within the field of labor-management relations where there is to be no state regulation.

11

NLRA, the NLRA nonetheless preempts state regulation of that conduct because the conduct is a "weapon of self-help" that Congress meant to leave unregulated. Machinists, 427 U.S. at 146 (quoting Garner v. Teamsters Union , 346 U.S. 485, 500 (1953)).

B.

Jurisdiction

Before we apply the principles of NLRA preemption to the case at hand, we consider first a question raised by the intervenors, joined by the government, with respect to the standing of the associations to challenge the WDA as preempted by conflict with S 7 of the NLRA. The issue of standing is jurisdictional.

A declaratory judgment or injunction can issue only when the constitutional standing requirements of a"case" or "controversy" are met. See U.S. Const., Art. III, S 2; Maryland Casualty Co. v. Pacific Coal & Oil Co. , 312 U.S. 270, 272 (1941). Although declaratory judgments are frequently sought in advance of the full harm expected, they must still present a justiciable controversy rather than "abstract, hypothetical or contingent questions." Alabama State Fed'n of Labor v. McAdory, 325 U.S. 450, 461 (1945). We have explained that these standing requirements are satisfied when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990) (quoting Maryland Casualty, 312 U.S. at 273 (1941)).

That there is a substantial controversy between the parties here sufficient to meet the constitutional requirement of standing is evident. When the complaint was filed, the WDA was being enforced in the Virgin Islands. Employees had filed claims with the Department of Labor seeking relief under the Act. Hearings had been scheduled for April 6, 1999, and at least 12 employers scheduled for April hearings were members of the St. Thomas-St. John Hotel and Tourism Association. As a

12

consequence of the enforcement of the WDA, the employers' ability to freely discharge their employees or to contract for terms of discharge was limited as they would be subject to liability if they discharged their employees for reasons other than those stated in the challenged act.

The associations, representing the interests of employers in the Virgin Islands, seek declaratory and injunctive relief from enforcement of the statute on the ground that the WDA is unenforceable because it is preempted by the NLRA,[3] and seek prospective injunctive relief under 42 U.S.C. S 1983 against the Commissioner of Labor in her official capacity, alleging that by enforcing the WDA the Commissioner is violating their federal rights. The parties' interests in this action could not be more adverse, as the government and employees, both defendants here, seek to enforce the protections provided by the WDA, and the employers, through the associations, seek to avoid enforcement of those protections.

The intervenors and the government do not question the associations' organizational standing to bring a cause of action challenging the statute on behalf of their member employers. Instead, the intervenors challenge the associations' ability to argue that the WDA is preempted based on conflict with S 7.

The appellants claim that because employers, unlike employees, have no substantive rights under S 7, they are precluded from relying on S 7 for their preemption claim. Section 7 provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to

_____

3. The associations also allege that "supervisors cannot be covered by the [WDA] pursuant to the Supreme Court's decision in Beasley v. Food Fair of North Carolina, Inc., 416 U.S. 653, 662 (1974)." Compl. P 13. The District Court declined to decide that claim, and it is therefore not before us on appeal.

13

refrain from any or all such activities except to the
extent that such right may be affected by an agreement
requiring membership in a labor organization as a
condition of employment as authorized in section
158(a)(3) of this title.

29 U.S.C. S 157.

It is indeed evident, as the appellants argue, thatS 7
confers rights on employees rather than employers, but
that is not determinative of the associations' standing to
raise that issue. We know of no governing authority to the
effect that the federal statutory provision which allegedly
preempts enforcement of local legislation by conflict must
confer a right on the party that argues in favor of
preemption. On the contrary, a state or territorial law can
be unenforceable as preempted by federal law even when
the federal law secures no individual substantive rights for
the party arguing preemption. See, e.g., California Fed. Sav.
& Loan Assoc. v. Guerra, 479 U.S. 272 (1987) (action for
declaratory and injunctive relief brought by employers
arguing that California state law was preempted by the
Pregnancy Discrimination Act of 1978, which gives rights to
pregnant employees under Title VII); Ray v. Atlantic
Richfield Co., 435 U.S. 151 (1978) (action brought by a
tanker company arguing that Washington Tanker Law was
preempted by conflict with the Ports and Waterways Safety
Act of 1972, which imposes operation, safety, and
environmental requirements on tanker companies).

But our conclusion that the associations have standing
to bring this action challenging enforcement of the WDA
does not end the jurisdictional inquiry, for the District
Court must also have subject matter jurisdiction over the
associations' claims. See 48 U.S.C. S 1612(a) (providing that
the District Court of the Virgin Islands "shall have the
jurisdiction of a District Court of the United States"); see
generally Estate of Thomas Mall, Inc. v. Territorial Court of
the V.I., 923 F.2d 258, 260–64 (3d Cir. 1991) (explaining
jurisdictional system for civil actions in the Virgin Islands).

Jurisdiction is established in this case under 28 U.S.C.
S 1331. The associations seek injunctive and declaratory
relief from enforcement of a territorial regulation on the

14

ground that the regulation is preempted by the NLRA, a federal statute which grants employers as well as employees substantive federal rights. See Golden State Transit Corp. v. City of L.A., 493 U.S. 103, 108–12 (1989) (Golden State II) (holding that the NLRA confers a substantive right on employers and employees to be free of governmental regulation within the zone of Machinists preemption).4 The Supreme Court has recognized that such a challenge presents a federal question which the federal courts have jurisdiction under 28 U.S.C. S 1331 to resolve. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983); see also Lawrence County v. Lead–Deadwood Sch. Dist. No. 40–1, 469 U.S. 256, 259 n.6 (1985). 5

C.

Application of Preemption Principles to the WDA

The associations argue, and the District Court agreed, that the WDA is preempted by the NLRA under the Machinists doctrine because it regulates conduct that Congress meant to leave unregulated. That argument is

_____

4. The associations assert that, in addition to the right conferred by the NLRA under Machinists preemption, the NLRA also confers a substantive right of "voluntary unionism" on employers. Our research uncovered no case in which a court has recognized such a right. Moreover, even if such a right were to exist, we find questionable the District Court's assertion that the right would enure in the text ofS 7, see slip op. at 14 (stating that "section 7 . . . guarantee[s] rights to employers as well as to employees"), rather than its being implicit in the structure and goals of the NLRA as a whole. In any event, we do not reach that issue in this case.

5. In finding federal jurisdiction under 28 U.S.C. S 1331 we do not decide whether territorial officials in their official capacities are "persons" under
S 1983 when sued solely for prospective injunctive relief. Cf. Ngiraingas v. Sanchez, 495 U.S. 182, 192 (1990) (holding that plaintiff who sought damages against territory of Guam and its officials in their official capacities could not state a S 1983 claim because the territory and its officials are not "persons" under the section). Nor do we decide whether the federal Declaratory Judgment Act, 28 U.S.C.S 2201, applies to the Virgin Islands. Cf. 28 U.S.C. S 2201 (authorizing such relief by "any court of the United States").

15

foreclosed by the Supreme Court's decisions in Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985), and Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1 (1987).

At issue in Metropolitan Life was a Massachusetts statute that required that specified minimum mental health care benefits be provided to a state resident who was insured under a general insurance policy, an accident or sickness insurance policy, or an employee health-care plan that covered hospital and surgical expenses. Metropolitan Life Insurance Co. brought suit for declaratory and injunctive relief, arguing, inter alia, that the Massachusetts law was preempted by the NLRA under the Machinists doctrine "because Congress intended to leave the choice of terms in collective-bargaining agreements to the free play of economic forces." Metropolitan Life, 471 U.S. at 748. After examination of the congressional concerns behind the enactment of the NLRA, the Court rejected the argument that state regulations imposing minimum substantive standards on contract terms are preempted under Machinists. As the Court explained:

> The NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions. . .. The evil Congress was addressing thus was entirely unrelated to local or federal regulation establishing minimum terms of employment. . . . No incompatibility exists, therefore, between federal rules designed to restore the equality of bargaining power, and state or federal legislation that imposes minimal substantive requirements on contract terms negotiated between parties to labor agreements, at least so long as the purpose of the state legislation is not incompatible with the[ ] general goals of the NLRA.

Id. at 753-55.

The Court addressed a similar argument two years later in Fort Halifax. The state statute at issue in Fort Halifax required employers in Maine to provide a one-time severance payment to employees in the event of a plant

16

closing, unless the employee was "covered by a contract that deals with the issue of severance pay." 482 U.S. at 5. Employees of a closed packing plant, as well as the Maine Director of the Bureau of Labor Standards, brought suit in state court for enforcement of the statute. On certiorari to the Supreme Court, the owner of the closed plant, like the insurer in Metropolitan Life, argued that preemption of the state statute was necessary under Machinists"to further Congress' intent that the conduct involved be unregulated because [it should be] left to be controlled by the free play of economic forces." Id. at 19-20 (internal quotations omitted). It argued that its case was not controlled by Metropolitan Life because the statutory obligation under the Maine statute applied only in the absence of an agreement between an employer and its employees.

The Fort Halifax Court confirmed its holding in Metropolitan Life that a state law establishing a minimum employment standard is not preempted by the NLRA, adding that there is no preemption even when the state law permits parties to an employment agreement to contract out of the protections provided by the law. See id. at 22. The Court explained:

> It is true that the Maine statute gives employees something for which they otherwise might have to bargain. That is true, however, with regard to any state law that substantively regulates employment conditions. Both employers and employees come to the bargaining table with rights under state law that form a "backdrop" for their negotiations.

Id. at 21 (quoting Metropolitan Life, 471 U.S. at 757).

Metropolitan Life and Fort Halifax clearly stand for the proposition that, in enacting the NLRA, Congress did not intend to prevent states from establishing minimum substantive requirements for contract terms. See generally Metropolitan Life, 471 U.S. at 754-55 (discussing goals of the NLRA). Although the associations insist that the WDA is not a minimum substantive requirement like the ones at issue in Metropolitan Life or Fort Halifax, they provide no principled basis for distinguishing the WDA from the statutes upheld in those cases.

17

The associations attempt to draw support from two cases decided in the Court of Appeals for the Ninth Circuit. In the first, the court held that a wrongful discharge claim brought by an employee under the Montana Wrongful Discharge from Employment Act, Mont. Code Ann. SS 39-2-901 et seq. (providing that discharge must be for good cause), was preempted by the NLRA. See Barnes v. Stone Container Corp., 942 F.2d 689 (9th Cir. 1991). A look at the facts of Barnes reveals, however, that it is of little value here.

The collective-bargaining agreement between Barnes's employer, Stone Container Corp., and his union expired and, after its extension for unsuccessful negotiations, the employer exercised its right to terminate the agreement and hired a number of replacement workers. Two of those new employees were sprayed with water at the work site, and Stone Container charged Barnes with the harassment of those employees and fired him. The union filed an unfair labor practice charge on behalf of Barnes, asserting that the stated reason for his discharge was pretextual and that Stone Container fired him for his union activity. After investigation, the NLRB found no basis for the retaliation charge and the union withdrew the complaint.

Barnes then filed an action under the Montana wrongful discharge act, alleging dismissal without just cause. After Barnes had been discharged, the bargaining between his employer and union reached an impasse. The employer sought summary judgment from the federal court to which the action had been removed, arguing preemption under Machinists, because the wrongful discharge act would impose a just cause term where one did not exist. The district court denied summary judgment but the court of appeals reversed. The court held that permitting a wrongful discharge action during the period after contract expiration but before a bargaining impasse is the sort of entanglement Machinists sought to avoid, as it altered significantly the incentives to negotiate. The court did not invalidate the state statute but merely held its use in those unique circumstances was preempted.

That the Barnes decision is limited to a narrow set of circumstances was made clear by the Ninth Circuit itself

18

the following year in National Broad. Co., Inc. v. Bradshaw, 70 F.3d 69, 73 (9th Cir. 1995) (holding that because a state statutory remedy was not invoked until after bargaining impasse was reached, "the type of interference with negotiations frowned upon in Barnes did not occur"). That set of circumstances is not present in this case.

The second case out of the Ninth Circuit relied on by the associations, Chamber of Commerce of United States v. Bragdon, 64 F.3d 497 (9th Cir. 1995), is also distinguishable from this case. There, the court held that a county ordinance that required private employers to pay "prevailing wages" to employees on certain types of private industrial projects costing over $500,000 was preempted by the NLRA under Machinists preemption. See id. at 498. The court noted that imposition of such substantive requirements affects the bargaining process and could dictate the results of a contract, id. at 501, an undue governmental interference with the collective bargaining processes protected by the NLRA, id. at 504.

Even if we were to agree with the Ninth Circuit that Metropolitan Life and Fort Halifax permit the extension of Machinists preemption to displace state law that imposes substantive minimum requirements for contract terms rather than regulates the use of economic bargaining weapons, see id. at 501, the county ordinance at issue in that case is remarkably different from the WDA. In establishing nine statutory bases for lawful discharge in the Virgin Islands, the WDA neither regulates the process of bargaining nor upsets the balance of power of management on one side and labor on the other that is established by the NLRA.

Instead, the WDA is directed to limiting the permissible bases for discharge of an employee to a broad list, including, inter alia: engaging in conflicting business; engaging in insolent or offensive conduct; using intoxicants or controlled substances that affect the employee's work; disobeying reasonable rules or instructions; being negligent, incompetent, inefficient, dishonest, or unable to work with others; and, regardless of the employee's behavior, economic hardship of the employer. See V.I. Code

19

Ann. tit. 24, S 76. This appears to be a comprehensive list, covering all or almost all legitimate reasons for discharge.

The associations also argue that the WDA cannot be a minimum employment standard because it treats union and non-union employees differently by permitting the union to contract its members out of the protections provided by the WDA but not permitting non-union employees to contract out of the protections. They argue that this opt-out for union employees "forces" unionization, triggering preemption by conflict with S 7 and the Machinists doctrine.

Our analysis of this alternative argument is guided by the Supreme Court's discussion in Livadas v. Bradshaw, 512 U.S. 107 (1994). A California state law guaranteed to all California workers immediate payment of wages upon discharge. Livadas, an employee of Safeway supermarket, was covered by a collective-bargaining agreement which provided for binding arbitration for disputes as to the interpretation or application of the agreement, including grievances arising from allegedly unjust discharge or suspension. Id. at 110. When Livadas was discharged, she demanded her payment immediately, but the store manager refused, instead sending her payment by mail. Livadas filed an administrative claim against Safeway for a statutory penalty for the three-day delay caused by the mailing, but the Commissioner of Labor refused to enforce the claim because Livadas was covered by a collective-bargaining agreement containing an arbitration clause. Livadas then filed suit, asserting that the Commissioner's non-enforcement policy was preempted.

The Supreme Court agreed, holding that the Commissioner's policy was preempted by the NLRA because it forced Livadas to choose between exercising her state law right to immediate payment and exercising her right to enter into a collective bargaining agreement with an arbitration clause. See id. at 117. In doing so, the Court distinguished Fort Halifax, which involved a minimum employment standard with an opt-out provision, in part on the ground that "the minimum protections of Maine's plant-closing law were relinquished not by the mere act of signing an employment contract (or collective-bargaining

20

agreement), but only by the parties' express agreement on different terms." Id. at 131. The Court stated:

> While the Commissioner and her amici call our attention to a number of state and federal laws that draw distinctions between union and nonunion represented employees, virtually all share the important second feature observed in [Fort Halifax], that union-represented employees have the full protection of the minimum standard, absent any agreement for something different. These `opt out' statutes are thus manifestly different in their operation (and their effect on federal rights) from the Commissioner's rule that an employee forfeits his state-law rights the moment a collective-bargaining agreement with an arbitration clause is entered into. Hence, our holding that the Commissioner's unusual policy is irreconcilable with the structure and purposes of the Act should cast no shadow on the validity of these familiar and narrowly drawn opt-out provisions.

Id. at 131-32 (citations omitted). In a footnote, the Court added: "Nor does is seem plausible to suggest that Congress meant to pre-empt such opt-out laws, as `burdening' the statutory right of employees not to join unions by denying nonrepresented employees the `benefit' of being able to `contract out' of such standards." Id. at 132 n.26.

The Supreme Court's discussion in Livadas thus supports a conclusion that the WDA is not preempted by the NLRA even though it provides an opt-out by express terms of union contract. Like the Maine statute at issue in Fort Halifax, and unlike the California Commissioner's policy in Livadas, the WDA does not force an employee to choose between collective bargaining and the protections of state law; rather, it protects all Virgin Islands employees, but gives employees the option of relinquishing the territorial statutory protections through the terms of a collective-bargaining agreement.

We are not alone in our conclusion that state minimum employment requirements are not inconsistent with the NLRA even when they provide for a union contract opt-out.

21

We have seen no case in which a court of appeals has decided otherwise. Indeed, there are several cases in which the Court of the Appeals for the Ninth Circuit held that an opt-out provision for union contracts did not trigger preemption by the NLRA. See Viceroy Gold Corp. v. Aubry, 75 F.3d 482, 490 (9th Cir. 1996) (holding that statute limiting mine workers to an 8-hour day unless otherwise provided in a collective bargaining agreement is not preempted); National Broadcasting Co., 70 F.3d at 73 (holding that state regulations requiring employers to pay double time for all hours worked over 12 hours in a day unless the employees were covered by a collective bargaining agreement providing specified minimum overtime benefits are not preempted).

Underlying the associations' argument and the District Court's opinion in this case is the unsettling supposition that by enacting the WDA the Virgin Islands legislature is regulating in an area that has traditionally been left to the freedom of contract between an employer and an employee. The Supreme Court has made clear that Machinists preemption does not extend into the realm of establishment of minimum employment standards like that established by the WDA. Moreover, the Court has cautioned that"[i]n labor pre-emption cases . . . our office is not to pass judgment on the reasonableness of state policy." Livadas, 512 U.S. at 120. It appears that the determination of the Virgin Islands legislature that its citizens are in need of minimum employment protections falls within the precedent established by the Supreme Court that such legislation is not preempted by the NLRA.

IV.

CONCLUSION

We have determined that the District Court's conclusion that the associations have a likelihood of success on the merits of their claim that the WDA is preempted by the NLRA under the Machinists doctrine or by conflict with S 7 was based on erroneous legal analysis. It follows that we will vacate the District Court's order granting the preliminary injunction.

22

It is apparent that although the District Court referred to testimony introduced by the associations at the hearing on the preliminary injunction, that testimony was not factual and the District Court relied on its earlier legal ruling in Bell as the basis for its preemption decision. At argument, the parties seemed to agree that there are no factual issues to be decided and no further evidence to be taken that would be relevant to a ruling on a permanent injunction. The Supreme Court has counseled that "if a district court's ruling rests solely on a premise as to the applicable rule of law, and the facts are established or of no controlling relevance, that ruling may be reviewed even though the appeal is from the entry of a preliminary injunction." Thornburgh v. American Coll. of Obst. & Gyn., 476 U.S. 747, 757 (1986). However, we have not asked the parties to brief this issue and there remains for decision by the District Court the associations' claim that the WDA should not be applied to supervisors. Accordingly, we will not presume to go further than the appellants request, i.e. that we vacate the preliminary injunction, and we will remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

  Clerk of the United States Court of Appeals
  for the Third Circuit

23