Anthony **BARNES**, Plaintiff–Appellee,

v.

**STONE CONTAINER CORPORATION,**
Defendant–Appellant.

No. 90–35422.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1991.

Decided Aug. 21, 1991.

Howard Rubin, Amburgey, Segel & Rubin, Portland, Ore., for defendant-appellant.

John B. Whiston, Rossbach & Whiston, Missoula, Mont., for plaintiff-appellee.

Before WIGGINS, BRUNETTI and NELSON, Circuit Judges.

BRUNETTI, Circuit Judge:

Anthony Barnes filed a state court action under the Montana Wrongful Discharge from Employment Act, Mont. Code Ann. §§ 39-2-901 *et seq.,* ("WDA"), in response to his termination by Stone Container Corporation ("Stone"). Stone removed the action to the District Court for the District of Montana and filed a motion for summary judgment which was denied by the court. Because of the important issues of law involved, the court certified its order for interlocutory appeal and we granted Stone's petition to file the appeal. We have jurisdiction pursuant to 28 U.S.C. § 1292(b), and reverse.

### I.

The parties do not dispute the relevant facts. Barnes was employed at the Frenchtown paper mill between March 3, 1980 and October 13, 1987. Stone acquired the mill from Champion International Corporation in 1986. Production and maintenance employees at the Frenchtown mill were represented by United Paperworkers International Union and United Paperworkers International Union Hellgate Local No. 85 ("Union"). The last collective bargaining agreement ("CBA") between Stone and the Union ran from June 1, 1984 to May 31, 1987.

In early 1987 Stone gave timely notice of reopening the CBA and the parties began negotiating a successor agreement. During the course of these negotiations, pursuant to § 47.3 of the expiring CBA, the terms of the agreement continued to have effect. In August 1987 Stone exercised its right under § 48 of the expiring CBA to terminate the agreement. The parties continued to negotiate over the next several months, but reached an impasse in November 1987.

In preparation for a possible strike, beginning in August 1987, Stone interviewed potential replacement workers. Union members, including Barnes, picketed the interview site. Although no strike occurred, Stone hired a number of the interviewees. Two of these new employees were sprayed with water at the work site. On October 15, 1987 Barnes was charged with this harassment of his co-workers and fired.

The Union filed an unfair labor practice charge on behalf of Barnes, asserting the stated reason for his discharge was pretextual and that Stone fired him for union activity. After investigation the NLRB found no basis for the retaliation charge and the Union withdrew the complaint. Barnes then filed an action under the Montana WDA, alleging dismissal without cause.

### II.

We review the denial of a motion for summary judgment de novo. *Tzung v. State Farm and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989). The parties have agreed that no material facts are at issue and that this appeal presents a pure question of law.

The Montana WDA provides: "A discharge is wrongful ... if: ... (2) the dis-

charge was not for good cause...." Barnes' complaint asserts that he was fired in violation of this provision of the WDA. In its motion for summary judgment, Stone argued that Barnes' WDA action is preempted by the National Labor Relations Act, 29 U.S.C. § 158 *et seq.* ("NLRA"), under *International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976).

In *Machinists*, during negotiations for renewal of an expired contract, members of the union engaged in a concerted refusal to work overtime. The employer filed a charge with the NLRB which was dismissed. The employer also filed a charge with the Wisconsin Employment Relations Commission, which found that the action was an unfair labor practice under *state law*. The Supreme Court held that the state law remedy was preempted not, as under *San Diego Building Trades v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), because of the supremacy of the NLRA, but rather because there are areas of labor management relations Congress intended to be left unregulated either by federal or state law.[1] The NLRA declined to prohibit certain concerted conduct which, in doing so, it intended to permit. State laws prohibiting such conduct are thus preempted. *See Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *New York Telephone Co. v. New York State Dept. of Labor*, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979); *Teamsters Union v. Morton*, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964).

Stone asserts that Barnes' WDA claim is preempted under *Machinists* because the statute would impose a just cause term where one does not exist (i.e., under the expired CBA), thus affecting the relations between employer and its represented employees after contract-termination and prior to impasse. It argues that in light of *Machinists*, the NLRA contemplates relations free of state interference during this period.

One circuit has decided a similar issue. In *Derrico v. Sheehan Emergency Hospital*, 844 F.2d 22 (2nd Cir.1988), the plaintiff was discharged after expiration of the collective bargaining agreement, but before the employee representative and employer had bargained to impasse. Derrico filed claims under the NLRA which were dismissed. He then filed a state court action, later removed to district court, asserting that he had been fired without just cause. His theory was that the expired bargaining agreement contained a just cause provision which, after contract expiration and prior to impasse, resulted in an implied contract between each employee and the employer that there would be no discharge without cause.

The second circuit affirmed the district court's dismissal of the case under *Machinists*. The appellate court said that Derrico's theory of implied contract resulting from an expired CBA created "substantial potential for friction" with the "delicate machinery of the NLRA...." 844 F.2d at 28. First, permitting Derrico to proceed would artificially limit the parties' postexpiration options. When bargaining alone does not produce consensus, the NLRA contemplates that both sides will resort to economic weapons.... Such resort is an integral part of the balance the NLRA strikes between labor and management.... The possibility that a term of an expired CBA might become an implied contract under state law would tie the parties' hands in a manner inimical to this facet of the NLRA's collective bargaining process.

---

1. In *Garmon,* the Supreme Court held "[t]he general rule of preemption in labor cases is that if the activity relied on as the basis for a suit is 'arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.'" *Lumber Production Industrial Workers Local 1054 v. West Coast Industrial Relations Ass'n, Inc.,* 775 F.2d 1042, 1047–48 (9th Cir.1985) (quoting *Garmon,* 359 U.S. at 245, 79 S.Ct. at 779).

*Id.* at 29 (citations and internal quotations omitted).

> Second, the court held that
>
> Derrico's theory would significantly affect the collective bargaining process that lies at the heart of the NLRA. Expiration of a CBA plainly works a significant change in the parties' relationship. Just as plainly, the prospect of that change and the mutual awareness of the tactics to which either side may thereafter resort provide the parties with incentives to negotiate. To allow a CBA provision to linger on after the contract's expiration in the form of an implied contract would dilute these effects.

*Id.* (citations omitted). The court held the implied contract action preempted under *Machinists* because it would "be tantamount to imposing a contract on the parties, a notion that has always been anathema to the NLRA...." *Id.*

Stone argues that as in *Derrico*, permitting Barnes to proceed under the WDA would impose a just cause requirement on the parties, thus influencing the bargaining relationship in a manner precluded by *Machinists*. The district court rejected this argument, distinguishing *Derrico* on its facts. It recognized that while Derrico asserted rights under the expired contract, Barnes asserts rights under a statute. The court held that such a law is not preempted, under *Machinists*, if it "does not attempt to regulate or prohibit private conduct in the labor management field but is a statute of general applicability...."

The Supreme Court has upheld state statutes which, although they affect employees covered by collective bargaining agreements, are statutes of *general applicability* and do not primarily "regulate relations between employees, their union, and their employer." *New York Tel. Co. v. New York State Dept. of Labor,* 440 U.S. 519, 533, 99 S.Ct. 1328, 1337, 59 L.Ed.2d 553 (plurality opinion) (quoting *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 193, 98 S.Ct. 1745, 1755, 56 L.Ed.2d 209 (1978)).

In *New York Telephone,* a fractured Court validated a statute authorizing payment of unemployment compensation to striking workers. The petitioner argued that because unemployment benefits are employer funded, payment to striking workers affects labor relations in a manner precluded by *Machinists*. The Court recognized that the New York law "has altered the economic balance between labor and management." *New York Tel. Co.,* 440 U.S. at 532, 99 S.Ct. at 1336 (footnote omitted). It held, however, that the statute

> does not involve any attempt by the State to regulate or prohibit private conduct in the labor-management field. It involves a state program for the distribution of benefits to certain members of the public. Although the class benefited is primarily made up of employees in the State and the class providing the benefits is primarily made up of employers in the State, and although some of the members of each class are occasionally engaged in labor disputes, the general purport of the program is not to regulate the bargaining relationships between the two classes but instead to provide an efficient means of insuring employment security in the State.

*Id.* at 532–33, 99 S.Ct. at 1337. The unemployment statute was upheld, at least in part,[2] because it did not attempt to regulate, although it clearly influenced, the bargaining relationship.

In *Metropolitan Life Ins. Co. v. Massachusetts* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Court again upheld a state law with an apparent impact on labor-management relations. Appellant challenged a statute requiring the provision of minimum mental health care benefits to employees covered by group insurance plans. It argued that the statute is preempted by the NLRA because it impos-

---

**2.** This ground was supported by Justice Stevens, the author of the lead opinion, and joined by Justice White and Justice Rehnquist. Justice Brennan, in a concurring opinion, and Justices Blackmun and Marshall, in a separate concur-

ring opinion, concluded there was sufficient evidence that Congress intended to allow states to pay unemployment benefits to striking workers to avoid preemption.

es a minimum employment standard in an area (i.e., welfare benefits) that is a mandatory subject of bargaining. Appellant asserted that "Congress' ultimate concern in the NLRA was in leaving the parties free to reach agreement about contract terms.... A law that interferes with the end result of bargaining is, therefore, even worse than a law that interferes with the bargaining process." *Id.* at 752, 105 S.Ct. at 2396.

The Court rejected this view, finding no evidence that the NLRA intended to preclude state minimum labor standards. The policies underlying the NLRA, restoration of equality of bargaining power and encouragement of collective bargaining, are not affected by the kind of the minimum standards contained in the Massachusetts law. *Id.* at 755, 105 S.Ct. at 2397. The standards "affect union and nonunion employees equally, and neither encourage nor discourage ... collective bargaining." *Id.* Finally, the court held that although the law "like many laws affecting terms of employment, potentially limits an employee's right to choose one thing by requiring that he be provided with something else, it does not limit the rights of self-organization or collective bargaining protected by the NLRA, and is not preempted by that Act." *Id.* at 758, 105 S.Ct. at 2399. *See also Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (relying on *Metropolitan Life,* the Court rejected a *Machinists* challenge to a state statute requiring a one-time severance payment to employees in the event of a plant closing).

The Montana WDA expressly excludes from coverage those employees covered by collective bargaining agreements. Mont. Code Ann. § 39–2–912(2). The district court relied on this exclusion in holding that the just cause provision of the WDA is one of general applicability: "There is no attempt by the state of Montana through the WDA to regulate or prohibit private conduct in the labor management field and the *Machinists* doctrine is not applicable here."

We agree that Montana's interference in the collective bargaining process is not intentional. We nevertheless believe the incidental effect of allowing Barnes to pursue his WDA action after contract expiration, but prior to a bargaining impasse, is precisely the sort of entanglement the Supreme Court sought to avoid in *Machinists.* Permitting WDA actions during this period would have the untoward effect of imposing a contract term on the parties and thus altering incentives to negotiate. As the *Derrico* court recognized:

> To allow a CBA provision to linger on after the contract's expiration in the form of an implied contract would dilute these effects. Trivializing the parties' agreed termination mechanism in this manner would also trivialize the very freedom of contract that is a fundamental policy of the NLRA.

*Derrico,* 844 F.2d at 29 (citation omitted). We believe this reasoning applies as well to a term imposed by a state statute as it does to a term implied via a contract theory derived from case law.

Unlike the unemployment compensation in *New York Telephone* and the health benefits in *Metropolitan Life,* we view the imposition of a just cause term by the WDA on the parties negotiating a contract as meddling at the heart of the employer-employee relationship at a time when such interference is most harmful. Issues of hiring and firing are often central to CBA negotiations and the NLRA, as interpreted in *Machinists,* intended to allow the parties to resolve these matters without the unsettling effect of state regulation.

### III. Conclusion

We hold that Barnes' action is preempted by the NLRA under *Machinists.* The judgment of the district court is reversed. The case is remanded to the district court which is ordered to enter judgment for Stone in accordance with this opinion.

REVERSED AND REMANDED.