NATIONAL BROADCASTING COM-
PANY, INC., a corporation,
Plaintiff–Appellant,

v.

Victoria L. BRADSHAW, Labor Commissioner of the State of California (S.A.); National Association of Broadcast Employees & Technicians, AFL–CIO, an unincorporated association; National Association of Broadcast Employees and Technicians Local 53, AFL–CIO, an unincorporated association, Defendants–Appellees.

No. 92–56178.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 1994.

Decided Aug. 30, 1995.

As Amended on Denial of Rehearing
and Suggestion for Rehearing
En Banc Dec. 4, 1995.

Steven G. Drapkin, Proskauer Rose Goetz & Mendelsohn, Los Angeles, CA, for plaintiff-appellant.

H. Thomas Cadell, Jr., Div of Labor Standards Enforcement, Dept. of Indus. Relations, State of CA, for defendant-appellee Victoria Bradshaw.

Ralph M. Phillips, Wohlner Kaplon Phillips Vogel & Young, Encino, CA, for defendants-appellees Nat. Ass'n of Broadcast Employees and Technicians, et al.

Before WILFRED FEINBERG,* SCHROEDER and KOZINSKI, Circuit Judges.

SCHROEDER, Circuit Judge:

This case arises out of a bitter labor dispute between the National Broadcasting Company ("NBC") and its employees' union, the National Association of Broadcast Employees and Technicians Local 53, AFL–CIO ("NABET"). When their collective bargaining agreement expired in March of 1990, NBC and NABET bargained to impasse and eventually reached a new agreement almost a year later, in February of 1991. Under California law, employers in the broadcast industry must pay double time for all hours worked over twelve hours in a day, unless the employees are covered by the terms of a collective bargaining agreement providing specified minimum overtime benefits. Cal. Ind.Welf.Com.Wage Order No. 11–80, 8 Cal. Code Reg. § 11110(3)(A)(2) & (F) (1980) ("Wage Order 11–80"). The NBC/NABET successor agreement's overtime provisions were not made retroactive to cover the period following the old agreement's expiration. In December of 1990, NABET union members began filing claims with the California

---

* Honorable Wilfred Feinberg, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

Labor Commission for overtime worked after the expiration of the old collective bargaining agreement. When the new agreement became effective, the Labor Commission indicated it would honor the claims for overtime worked during the period between agreements (the "gap period"). In May of 1991, NBC filed this suit against the Labor Commissioner and NABET in federal court. The issue before us is whether, after the parties have entered into a new, non-retroactive collective bargaining agreement, the California Labor Commissioner may enforce the state's overtime Wage Order for the inter-agreement gap period, or whether such enforcement is preempted by federal labor laws promoting the collective bargaining process.

The district court held that California's enforcement of Wage Order 11–80, a minimum state labor standard, was not preempted by either § 7 or 8 of the National Labor Relations Act. It entered summary judgment for the Labor Commissioner and the union. NBC appeals, contending that enforcement of the California law is an intrusion into the collective bargaining process under the line of Supreme Court authority beginning with *Machinists v. Wisconsin Employment Relations Comm.*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), known as "*Machinists* preemption." *Id.* at 140, 96 S.Ct. at 2553 (states should not regulate conduct Congress has chosen to leave to "the free play of economic forces").

We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm. We apply well-settled Supreme Court authority to hold that the state's post-impasse, post-successor-agreement application of its minimum overtime requirements to the gap period during which the employees were not covered by a collective bargaining agreement did not interfere with the collective bargaining process.

## I. BACKGROUND

The background facts are neither complex nor materially disputed. NBC and NABET were parties to a collective bargaining agreement that expired on March 31, 1990. The parties negotiated for the next several months but failed to reach an agreement. On August 15, 1990, NBC declared an impasse and unilaterally imposed several of its proposals. The subsequent negotiations yielded an agreement and the parties entered into a new agreement effective February 9, 1991.

Under § 3(A) of the California Industrial Welfare Commission Wage Order No. 11–80, 8 Cal.Code Reg. § 11110 (1980), employees in the broadcast industry who work more than twelve hours in a single day must be paid at least double the regular rate of pay for such overtime. Section 3(F) of the Wage Order provides an exemption to the overtime requirement for

> any employee covered by a collective bargaining agreement if said agreement provides premium wage rates for overtime work and a cash wage rate for such employee of not less than one dollar ($1.00) per hour more than the minimum wage.

8 Cal.Code Reg. § 11110(3)(F).

Both the expired agreement and the new agreement met the substantive requirements for the Wage Order's § 3(F) overtime exemption. During the period that was not governed by a valid collective bargaining agreement, i.e., between April 1, 1990 and February 8, 1991, NBC continued to pay its employees overtime at the same rate it had paid under the expired agreement. The February 9, 1991 agreement provided for increased wages but did not provide that the overtime provisions retroactively cover the inter-agreement gap period.

In December 1990, NABET-member employees of NBC had begun filing claims with the California Labor Commission for enforcement of state law provisions for overtime worked during the gap period. On April 2, 1991, counsel for the then acting Labor Commissioner sent a letter to NBC that explained that the NABET-members' claims had been handled in accordance with the Commission's long-standing practice of waiting until the parties enter into a new agreement and then applying Wage Order 11–80's provisions to the interim period only if the overtime provisions of the successor contract are not made retroactive to the date of the old contract's expiration. The letter stated in relevant part:

[T]he division has a long-established policy that provides that the mere expiration of a collective bargaining agreement will not operate to remove the worker from coverage by the collective bargaining agreement. Absent some other unilateral action by the parties to the expired CBA, the terms and conditions of the agreement (except for arbitration and union recognition) continue. In the vast majority of cases the parties reach agreement and retroactively implement the newly negotiated terms and conditions.

. . . .

It is because of this history of collective bargaining that the Division has taken the position that mere expiration of the agreement will not suffice to trigger the requirement that the employer comply with the overtime obligations contained in the IWC Orders.... [I]f the division were to measure the date the obligation of the employer arises to meet the overtime requirements simply from the date of expiration of the CBA, the state would be needlessly inserting itself into the collective bargaining process. It is for this reason that the Division measures the date the employer's obligation arises from the date of the expiration of the contract only if subsequent events indicate that such date did, actually, mark the cessation of the protections contained in that contract. Implementation of unilateral conditions by the employer without subsequent negotiations which result in contract terms which are retroactive to the date of the expiration would make the term "agreement" meaningless for there would be no mutual assent.

NBC then filed this action for injunctive and declaratory relief, challenging the Labor Commissioner's threatened enforcement of state law overtime provisions.

## II. DISCUSSION

Wage Order 11–80 establishes an overtime minimum benefit protection that leaves employees represented by collective bargaining units free to negotiate a different overtime premium, provided the employees' cash wage rate exceeds the minimum wage by one dollar. 8 Cal.Code Reg. § 11110(3)(F). The Wage Order's overtime provisions do not apply unless employees work more than twelve hours a day. As we observed in *Babler Bros., Inc. v. Roberts,* 995 F.2d 911, 915 (9th Cir.1993), such state minimum benefit protections have repeatedly survived *Machinists* preemption challenges. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 754–55, 105 S.Ct. 2380, 2396–97, 85 L.Ed.2d 728 (1985) ("No incompatibility exists" between federal collective bargaining law and state law that imposes minimal substantive labor standards "at least so long as the purpose of the state legislation is not incompatible with the[ ] general goals of the NLRA."); *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 20–22, 107 S.Ct. 2211, 2222–23, 96 L.Ed.2d 1 (1987) (rejecting argument "that a State's establishment of minimum substantive labor standards undercuts collective bargaining" even where statute permits collective bargaining for different protections than those assured by the statute for non-union employees). In *Fort Halifax,* the Court upheld a state severance pay statute that contained an exemption for parties covered by a collective bargaining agreement containing severance pay provisions. The Court concluded that

[i]f a statute that permits *no* collective bargaining on a subject escapes NLRA pre-emption, see *Metropolitan Life,* surely one that permits such bargaining cannot be pre-empted.

*Fort Halifax,* 482 U.S. at 22, 107 S.Ct. at 2223. The Court further noted that "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State." *Id.* at 21, 107 S.Ct. at 2222.

More recently, the Supreme Court refined its *Fort Halifax* analysis and held that a state could not withhold its minimum benefit protections from employees solely on the ground that they were bound by a collective bargaining agreement containing an arbitration clause. *Livadas v. Bradshaw,* — U.S. —, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). The *Livadas* Court noted that the critical feature of the state law provision in *Fort Halifax* was that "union-represented employees have the full protection of the minimum standard, absent any agreement for some-

thing different." *Id.* at ——, 114 S.Ct. at 2082. This exemption is similar to the overtime exemption contained in § 3(F) of Wage Order 11–80. Enforcement of the California Wage Order affording certain minimum overtime benefits to employees who are under no agreement providing for a different rate is fully consistent with the Supreme Court's reasoning in *Fort Halifax* and *Livadas.* Affirmance of the district court's judgment is required by their analyses.

Cases upon which NBC relies, on the other hand, all involved state intrusion into the collective bargaining process. In *Machinists,* for example, during the course of collective bargaining negotiations, union members concertedly refused to work overtime. The employer filed a complaint with the Wisconsin Employment Relations Commission charging an unfair labor practice under Wisconsin state law. The Supreme Court ruled that the union's conduct could not be regulated by the state because Congress intended that a union's access to tools of "self-help" and "economic pressure" in collective bargaining be unfettered by state law. *Machinists,* 427 U.S. at 132, 96 S.Ct. at 2549–50. In *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986), the City of Los Angeles tried to force taxi drivers and their employers to settle a labor dispute by withholding renewal of the operators' licenses. In holding the City's action preempted, the Supreme Court invoked a long-standing doctrine that the state should not interfere with the bargaining positions of the parties. *Golden State,* 475 U.S. at 619, 106 S.Ct. at 1401; *see also Machinists,* 427 U.S. at 146, 96 S.Ct. at 2556 (State laws must not "upset the balance of power between labor and management expressed in our national labor policy.") (quoting *Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776,* 346 U.S. 485, 500, 74 S.Ct. 161, 98 L.Ed. 228 (1953)). *See also Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 108–09, 110 S.Ct. 444, 449–50, 107 L.Ed.2d 420 (1989) ("*Golden State II*") (holding that 42 U.S.C. § 1983 relief is available in some circumstances where state actions interfere with the bargaining process). In the instant case, there is no state interference in the collective

bargaining process and therefore no violation of federal labor policy calling for preemption.

NBC nevertheless contends that if the parties, at the end of the bargaining process, fail to make their overtime agreement retroactive and the state then imposes liability under the Wage Order for the gap period, the state is somehow interfering with the employer's "bargaining tactics." NBC argues that the result is to force the employer in bargaining to pay the state minimum or negotiate a retroactive overtime provision. This is true, but without consequence in federal labor law. The Supreme Court in *Fort Halifax* rejected a very similar preemption argument, holding that the enforcement of state minimum standards creates a "backdrop" that must be taken into account in collective bargaining negotiations. *Fort Halifax,* 482 U.S. at 21, 107 S.Ct. at 2222–23. The practical effect of the law upheld in *Fort Halifax* was similar in that it created a specific severance pay obligation unless the parties negotiated a different one. As the Court in *Fort Halifax* emphasized, "[b]oth employers and employees come to the bargaining table with rights under state law that form a 'backdrop' for their negotiations." *Fort Halifax,* 482 U.S. at 21, 107 S.Ct. at 2222 (quoting *Metropolitan Life,* 471 U.S. at 757, 105 S.Ct. at 2398).

Far from playing an active role during the course of collective bargaining negotiations, as was the case in *Machinists* and *Golden State,* California's policy is to refrain from any action until after the parties complete negotiations and it is clear whether the employees have been provided retroactive overtime provisions in the new agreement. The state in no way injects itself into the bargaining process here; its post-agreement enforcement of the state minimum overtime standard as applied to the gap period is not inconsistent with § 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1982). *Cf. Bechtel Constr., Inc. v. United Broth. of Carpenters & Joiners of America,* 812 F.2d 1220 (9th Cir.1987).

As an alternative position, NBC asks that if we conclude that enforcement of Wage Order 11–80 is not preempted for the period

between impasse and the date the new agreement became effective, then we hold that its enforcement is preempted for that period between termination of the old agreement and declaration of impasse. NBC relies upon this court's decision in *Barnes v. Stone Container Corp.*, 942 F.2d 689 (9th Cir.1991), which was filed after the district court's decision in this case. In *Barnes* a worker was fired several months after expiration of a collective bargaining agreement that had contained a "just cause" discharge provision. Prior to the declaration of impasse, Barnes filed a state court wrongful discharge action under a *state* wrongful discharge law that also had a just cause standard. The employer removed the case to district court. On appeal, we relied upon the Second Circuit's decision in *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22 (2d Cir. 1988), and held that *Machinists* preemption barred any employee relief under state law. *Barnes*, 942 F.2d at 693. This court concluded:

> Montana's interference in the collective bargaining process is not intentional. We nevertheless believe the incidental effect of allowing Barnes to pursue his WDA action after contract expiration, but prior to a bargaining impasse, is precisely the sort of entanglement the Supreme Court sought to avoid in *Machinists*.

*Id.* at 693. The *Barnes* court emphasized that the state "interference" (i.e., Barnes' filing of state law action) occurred *prior* to impasse—"a time when such interference is most harmful." *Id.* Seizing upon the distinction *Barnes* drew between pre-impasse and post-impasse interference, NBC asks that we hold that enforcement of Wage Order 11–80 is at least preempted as applied to the pre-impasse period.

*Barnes* does not speak directly to the legal issues presented in this case, which concern a minimum statutory benefit rather than an implied contractual provision. In addition, as the district court correctly observed, in this case the state statutory remedy was not invoked until after impasse was reached, and

therefore the type of interference with negotiations frowned upon in *Barnes* did not occur here. The reasoning of this court in *Barnes*, insofar as it is relevant, thus supports the district court's judgment and our affirmance of it.

At oral argument, NABET asked that we affirm the district court on the ground that the intervening Supreme Court decision in *Livadas* requires us to hold Wage Order 11–80's § 3(F) exemption invalid. We cannot accept this position as the Court in *Livadas* stressed that its holding "cast no shadow on the validity of ... familiar and narrowly drawn opt-out provisions." *Livadas*, —— U.S. at ——, 114 S.Ct. at 2082. California has tailored such an opt-out provision in § 3(F) of Wage Order 11–80.

Affirmed.