356 F.3d 979
 ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHERN CALIFORNIA, INC., a California corporation, Plaintiff-Appellant,
v.
Henry P. NUNN, III, an individual in his official capacity as Chief, Division of Apprenticeship Standards; Chuck Cake, an individual in his official capacity as Director of The Department of Industrial Relations and Administrator of Apprenticeship of the State of California; Jeannie Holmes, an individual, in her official capacity as Chairperson, California Apprenticeship Council, a public body of the State of California, Defendants-Appellees,
State Building and Construction Trades Council of California, AFL-CIO, Defendant-intervenor-Appellee.
 No. 02-56735.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 8, 2003.
 Filed January 16, 2004.
 As Amended February 17, 2004.
 
 COPYRIGHT MATERIAL OMITTED Dennis B. Cook, Ronald W. Brown, and Jessavel Y. Wong, Sacramento, CA, for the plaintiff-appellant.
 John M. Rea, Steven A. McGinty, and John A. Siqueiros, California Department of Industrial Relations, Los Angeles, CA, for the defendants-appellees.
 Stephen P. Berzon, Scott A. Kronland, and Linda Lye, San Francisco, CA, for the intervenor-appellee.
 John J. Davis, Jr. and Michael T. Anderson, San Francisco, CA, for the amici curiae.
 Appeal from the United States District Court for the Central District of California; Alicemarie H. Stotler, District Judge, Presiding. D.C. No. CV-02-00131-AHS.
 Before REINHARDT, FERNANDEZ, and RAWLINSON, Circuit Judges.
 REINHARDT, Circuit Judge.
 
 
 1
 By participating in a federal-state partnership that regulates apprenticeship standards, California encourages employers and unions to support training and education programs for citizens who seek access to the building construction trades and other skilled jobs. Although the goal of California's apprenticeship programs is to promote economic opportunity, its regulations have caused considerable concern to the employers affiliated with the Associated Builders and Contractors of Southern California, Inc. ("Associated Builders"). In February 2002, Associated Builders sought an injunction to prevent California officials from implementing amendments to 8 Cal.Code Regs. § 208(b)-(c), the subsections of California's regulations that establish minimum wages and benefits on public and private construction projects for state-registered apprentices.
 
 
 2
 Associated Builders argues that these provisions, as amended, are preempted by the Employee Retirement Income Security Act ("ERISA"), 88 Stat. 829, codified as amended at 29 U.S.C. § 1001 et seq., and by the National Labor Relations Act ("NLRA"), 49 Stat. 449, codified as amended at 29 U.S.C. § 151 et seq. The district court denied Associated Builders' motion for a preliminary injunction. It determined that Associated Builders had little likelihood of success on the merits on its facial challenge to these provisions because they are part of the same regulatory scheme that the Supreme Court held not to be preempted by ERISA, California Div. of Labor Standards v. Dillingham, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) ("Dillingham I"), and that the Ninth Circuit, on remand, held not to be preempted by the NLRA. Dillingham v. Sonoma County, 190 F.3d 1034 (9th Cir. 1999) ("Dillingham II").
 
 
 3
 The parties stipulated to the entry of a final judgment based upon the district court's order denying the preliminary injunction. Pursuant to Fed.R.Civ.P. 65(a)(2), the district court entered a final judgment, which Associated Builders appeals. We find that §§ 208(b)-(c), as amended, are not preempted by either ERISA or the NLRA.
 
 I. BACKGROUND
 
 4
 Since the founding of the American republic, states have regulated training programs for individuals seeking to enter skilled crafts, in order to prevent their exploitation by employers. See generally W.J. Rorabaugh, The Craft Apprentice: From Franklin to the Machine Age in America (1986). California has regulated apprenticeships since at least 1858, when the legislature enacted a statute that, among other provisions, required masters to offer apprentices a basic education. 1858 Cal. Stat., ch. 182, pp. 134-37, codified in Cal. Civ.Code §§ 264-274 (subsequently repealed and superseded by 1937 Cal. Stat., ch. 90).
 
 
 5
 California and other states were encouraged to take additional steps to regulate apprenticeships in 1937, when Congress passed the National Apprenticeship Act, 50 Stat. 664, codified as amended at 29 U.S.C. § 50 et seq. Known as the Fitzgerald Act, this legislation directs the Secretary of Labor "to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship...." 29 U.S.C. § 50. In response to this federal encouragement, California passed the Shelley-Maloney Apprentice Labor Standards Act in 1939, which created the regulatory framework that governs apprenticeship in the state to this day. 1939 Cal. Stat., ch. 220, codified as amended at Cal. Lab.Code § 3070 et seq. (2003).
 
 
 6
 The goals of California's regulatory scheme are to "foster, promote, and develop the welfare of the apprentice and industry, improve the working conditions of apprentices, and advance their opportunities for profitable employment...." Cal. Lab. Code § 3073 (2003). California fulfills these goals by offering a variety of incentives to encourage apprenticeship programs to seek state approval, which can be obtained if the programs comply with specified state standards. 8 Cal.Code Regs. § 212. Among the incentives that state-approved programs receive are direct financial assistance and automatic certification for relevant federal programs. Cal. Lab.Code § 3074; 29 C.F.R. § 29.12. Additionally, apprentices who enroll in state-sponsored programs (referred to as "registered" apprentices in the California Code) receive a journeyman's certificate upon completion of their training. Contractors who hire apprentices from these state-approved programs receive certain benefits as well. See Southern Cal. Chapter of Assoc. Builders and Contractors, Inc. v. Cal. Apprenticeship Council, 4 Cal.4th 422, 428-29, 432-35, 14 Cal.Rptr.2d 491, 841 P.2d 1011 (1992) (explaining how California's apprenticeship regulations work). Participation in the regulatory scheme is entirely voluntarily, however. California does not prohibit apprenticeship training programs from operating without state approval, and employers are not required to hire apprentices from state-approved programs or indeed to hire any apprentices at all.
 
 
 7
 For building contractors, a major benefit of hiring registered apprentices is that they can pay them a special rate for work that they perform on public construction projects. Cal. Lab.Code § 1777.5. This rate is typically lower than the journeyman rate, which is otherwise the required minimum for such projects under California's prevailing wage law. Cal. Lab.Code § 1771.[1] The special apprenticeship rate is set pursuant to 8 Cal.Code Regs. § 208(b), which is one of the two provisions of the California apprenticeship regulations that Associated Builders claims is preempted.
 
 
 8
 The other provision that Associated Builders challenges is 8 Cal.Code Regs. § 208(c), which establishes the rates that contractors are to pay to registered apprentices on private construction projects. Whereas the 2002 amendments did not substantially modify § 208(b), they re-calibrated the wage requirements for registered apprentices on private construction jobs that are set forth in § 208(c) in order to reflect the varied market conditions throughout California. Under § 208(c), as amended, a building construction contractor has two alternatives if it employs registered apprentices on private construction jobs. The first alternative is to pay registered apprentices a state-defined percentage of the prevailing per diem compensation package[2] for journeymen in the relevant craft and geographical area. This percentage progressively increases from 40 to 80 percent over the period of an apprentice's training program. 8 Cal. Code Regs. §§ 208(c)(1)-(5).[3] The second alternative is for a contractor to provide the same compensation package to registered apprentices on private projects that it pays for public work jobs in the same craft and locality. 8 Cal.Code Regs. § 208(c)(6). Like the rest of California's apprenticeship regulatory scheme, § 208(c) is entirely voluntary. It does not impose any obligations on contractors who do not employ apprentices from state-approved apprenticeship programs.
 
 
 9
 Two types of apprenticeship programs can qualify for state approval. Joint apprenticeship programs are collaborative ventures between unions and employers. Unilateral programs are run by employers with no union involvement. Cal. Lab.Code § 3075; 8 Cal.Code Regs. §§ 205(g), 206(a)-(b). At the time this lawsuit was filed, there were 28 state-approved unilateral apprenticeship programs, enrolling approximately 5,400 apprentices. Associated Builders sponsors three of these programs, which collectively enroll fewer than 600 apprentices.
 
 
 10
 Joint apprenticeship programs train a larger proportion of California's registered apprentices. At present, there are 195 active state-approved joint apprenticeship programs in the building and construction trades, enrolling over 43,500 apprentices. Among the sponsors are the California State Pipe Trades Joint Apprenticeship Committee and the Plumbers and Steamfitters Local 159 Joint Apprenticeship and Training Committee, the amici curiae who urge affirmance of the district court's ruling. The majority of unionized apprentices in state-approved programs are represented by the unions affiliated with the State Building and Construction Trades Council of California, AFL-CIO, whose motion to intervene as a defendant was granted by the district court.
 
 II. ANALYSIS
 
 11
 By entering a final judgment pursuant to Fed.R.Civ.P. 65(a)(2), the district court consolidated its preliminary injunction ruling with its decision on the merits. In such cases, we review the district court's factual findings for clear error and its conclusions of law de novo. Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 536 (9th Cir.2001); Barden Detroit Casino v. City of Detroit, 230 F.3d 848, 853 (6th Cir.2000).
 
 A. ERISA Preemption
 
 12
 According to its express preemption clause, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). This preemption clause ensures that plans and their sponsors minimize the administrative and financial burdens of complying with conflicting laws among states or between states and the federal government. The phrase "relates to" in the ERISA preemption clause has been interpreted by the Supreme Court as encompassing state laws that either have (1) a "reference to" or (2) a "connection with" employment benefit plans covered by this statute. Dillingham I, 519 U.S. at 324, 117 S.Ct. 832.
 
 
 13
 The "reference to" prong applies where the state law in question either acts "immediately and exclusively" upon an ERISA plan or the existence of such a plan is "essential" to the law's operation. Dillingham I, 519 U.S. at 325, 117 S.Ct. 832; Abraham v. Norcal Waste Systems, Inc., 265 F.3d 811, 820 (9th Cir.2001). Under the second prong, a state law has a "forbidden connection" with ERISA plans if it falls outside the scope of state laws that Congress understood would survive ERISA or if its effect is to bind ERISA plans. Dillingham I, 519 U.S. at 325, 117 S.Ct. 832; New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656-59, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).
 
 
 14
 The outcome of our ERISA preemption analysis is controlled by Dillingham I, in which the Supreme Court rejected an ERISA preemption challenge to Cal. Lab. Code § 1777.5, the California statutory provision that permits contractors to pay registered apprentices a special rate for work on public construction projects. 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791. The Supreme Court held that § 1777.5 did not run afoul of the "reference to" prong of ERISA preemption analysis because apprenticeship programs "need not necessarily be ERISA plans." Dillingham I, 519 U.S. at 325, 117 S.Ct. 832. Rather, § 1777.5 "functions irrespective of ... the existence of an ERISA plan" and is indifferent "to the funding, and attendant ERISA coverage, of apprenticeship programs." Id. at 328, 117 S.Ct. 832 (internal citations and quotations omitted).
 
 
 15
 Section 208, the regulation that Associated Builders challenges, implements the objectives established in Cal. Lab.Code § 1777.5 and other state legislation. In § 208, as amended, there is no specific provision that makes ERISA plans essential to its operation or that acts immediately or exclusively upon ERISA plans. Thus, § 208, like § 1777.5, survives Associated Builders' challenge under this "reference to" prong of ERISA preemption analysis.
 
 
 16
 Under the "connection with" prong of ERISA preemption analysis, Associated Builders' challenge to § 208 also fails for the reasons set forth in Dillingham I. Congress did not intend ERISA to preempt regulation in areas of traditional state concern, such as the regulation of apprenticeship standards, that are "quite remote from the areas with which ERISA is expressly concerned — reporting, disclosure, fiduciary responsibility and the like." Dillingham I, 519 U.S. at 330, 117 S.Ct. 832 (internal quotations and citations omitted). As the Supreme Court concluded in Dillingham I:
 
 
 17
 Given the paucity of indication in ERISA and its legislative history of any intent on the part of Congress to preempt state apprenticeship training standards, or state prevailing wage laws that incorporate them, we are reluctant to alter our ordinary assumption that the historic police powers of the States were not to be superseded by the Federal Act.
 
 
 18
 Id. at 331, 117 S.Ct. 832 (internal quotations and citations omitted).
 
 
 19
 Associated Builders argues that § 208(c) should be treated differently from the portion of California's apprenticeship regulatory scheme upheld in Dillingham I because it establishes standards for compensating apprentices employed on private works while § 1777.5 governs public works. Associated Builders acknowledges that regulating apprenticeship standards on public works is an exercise of traditional state power, but it argues that the state's establishment of comparable guidelines for private projects is not. This argument has little merit, however, for California has long regulated apprenticeship standards without regard to whether apprentices work for public or private employers.
 
 
 20
 Even if setting apprenticeship standards for private works were not an area of traditional state concern, Congress mandates that ERISA not be "construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States... or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). To hold that ERISA preempts California's apprenticeship regulations would violate this mandate, for when Congress passed the Fitzgerald Act, it "recognized pre-existing state efforts in regulating apprenticeship programs and apparently expected that those efforts would continue." Dillingham I, 519 U.S at 330, 117 S.Ct. 832.
 
 
 21
 The other reason why California's apprenticeship regulatory scheme does not have a "forbidden connection" is that it "does not bind ERISA plans to anything." Id. at 332, 117 S.Ct. 832. At most, California's regulatory scheme "alters the incentives, but does not dictate the choices, facing ERISA plans." Id. at 334, 117 S.Ct. 832. If the indirect economic effect of such incentives were sufficient to trigger ERISA preemption, there would be no effective constraints on "ERISA's preemptive reach, and the words `relate to' would limit nothing." Id. at 329, 117 S.Ct. 832; see also Travelers, 514 U.S. at 660-61, 115 S.Ct. 1671.
 
 
 22
 In determining that the California regulatory scheme does not dictate the choices facing ERISA plans, we reject Associated Builders' attempt to compare it to the Minnesota requirements governing sprinkler contractors that the Eighth Circuit held to be preempted by ERISA. Minnesota Chapter of Associated Builders and Contractors, Inc. v. Minnesota Dept. of Public Safety, 267 F.3d 807 (8th Cir.2001) ("Minnesota ABC"). The Eighth Circuit determined that Minnesota's requirement that all sprinkler contractors register all of their apprentices in a state-approved training program "does more than simply provide a powerful economic incentive, it prevents the use of apprentices who are not registered in approved programs." Id. at 815. In so holding, the Eighth Circuit explicitly distinguished Minnesota's requirements from the California apprenticeship standards upheld in Dillingham I. Id. Unlike the provisions preempted in Minnesota ABC, § 208 does not require that contractors maintain state-approved apprenticeship programs or that they hire registered apprentices in most circumstances. Rather, California provides minimum standards for those apprenticeship programs that voluntarily seek state approval.[4] Since § 208 does not compel an apprenticeship program to comply with California's apprenticeship standards, Associated Builders' reliance on Minnesota ABC is misplaced. Moreover, the 2002 amendments to § 208 present even less of a concern about compulsion than the provision challenged in Dillingham I because they reduce the incentive to seek state approval by increasing the wage rates for registered apprentices on private construction jobs.
 
 
 23
 Associated Builders also argues that California's minimum apprentice rates impermissibly affect ERISA plans because they can be satisfied by a mixture of wages and benefits. In WSB Elec., Inc. v. Curry, 88 F.3d 788, 793 (9th Cir.1996), we rejected an ERISA preemption challenge to California's prevailing wage law based on our analysis that the state regulation did not dictate terms; rather it only required that "regardless of how [employers] write their ERISA plans, or even whether they have ERISA plans at all, they must pay the prevailing wage, and they may do so through some combination of cash and benefits." Id. at 796. Here, there is even less of a concern about compulsion than there was in WSB because § 208 is not mandatory.
 
 
 24
 In sum, we conclude that ERISA does not preempt § 208 for the following reasons: these provisions do not act immediately or exclusively upon ERISA plans; apprenticeship standards are a traditional area of state concern; Congress has explicitly encouraged continued state regulation of apprenticeship standards; and California does not compel contractors or apprenticeship training programs to participate in its incentive-based regulatory scheme.
 
 B. NLRA Preemption
 
 25
 In contrast to its ERISA challenge, Associated Builders directs its NLRA preemption challenge only to § 208(c) of the California regulations, which governs apprenticeships on private projects. This is a wise strategy since any challenge to California's minimum standards for apprentices on public works would unquestionably be precluded by Dillingham II, 190 F.3d 1034. In Dillingham II, we expressly held that § 1777.5, the California statutory provision regulating apprenticeship standards on public works, was not preempted by the NLRA just as the Supreme Court, in Dillingham I, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791, held that it was not preempted by ERISA. Here, we conclude that for similar reasons the NLRA does not preempt the regulations with respect to work on private projects.
 
 
 26
 As a threshold issue, Associated Builders attempts to distinguish Dillingham II by arguing that it merely reasserted the basic principle that NLRA preemption does not apply when the state acts as either a proprietor or a market participant. Building & Constr. Trades Council v. Associated Builders & Contractors, Inc., 507 U.S. 218, 227, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993); Babler Bros., Inc. v. Roberts, 995 F.2d 911, 916 (9th Cir.1993); Rondout Elec., Inc. v. New York State Dep't of Labor, 335 F.3d 162, 167 (2d Cir.2003). Associated Builders misreads Dillingham II. There, we expressly rejected California's claim that it acted pursuant to its proprietary powers when it established apprenticeship standards for public works. Because our holding in Dillingham II turned on our determination that California's enactment of § 1777.5 constituted a regulatory not a proprietary action, the fact that the provision only dealt with public works was not material to our analysis. 190 F.3d at 1037-38. Therefore, Dillingham II cannot be distinguished on the ground that it applied to public as opposed to private projects.
 
 
 27
 Although the NLRA has no express preemption clause, the Supreme Court has nevertheless articulated two NLRA preemption principles. First, Garmon preemption prohibits states from regulating fields that Congress intended to occupy fully through the creation of a continuum between conduct that is either protected or prohibited by the NLRA. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The purpose of Garmon preemption is "to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the `integrated scheme of regulation' established by the NLRA." Golden State Transit Corp. v. City of Los Angeles, 475 U.S. 608, 613, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986) (quoting Wisconsin Dep't of Indus. v. Gould, Inc., 475 U.S. 282, 289, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986)). See also Michael H. Gottesman, Rethinking Labor Law Preemption, 7 YALE J. ON REG. 355 (1990).
 
 
 28
 Second, Machinists preemption prohibits states from imposing restrictions on labor and management's "weapon[s] of self-help" that were left unregulated in the NLRA because Congress intended for tactical bargaining decisions and conduct "to be controlled by the free play of economic forces." Lodge 76, Int'l Assoc. of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 140, 146, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). Associated Builders raises challenges to § 208(c) under both the Garmon and Machinists doctrines of NLRA preemption.
 
 
 29
 Associated Builder's primary Garmon argument is that § 208(c) impermissibly inserts the state into the bargaining process, thus interfering with the federally protected rights of workers to designate their own collective bargaining representatives. In Dillingham II, we rejected this argument because we determined that California's apprenticeship regulatory scheme "does not affect the right to bargain collectively." 190 F.3d at 1041.
 
 
 30
 Like the plaintiff in Dillingham II, Associated Builders relies for its NLRA preemption analysis on Bechtel Construction v. United Brotherhood of Carpenters & Joiners of America, 812 F.2d 1220 (9th Cir.1987). At issue in Bechtel was the California Division of Apprenticeship Standards' interpretation of 8 Cal.Code Regs. § 212(c), which allowed a contractor and a union to negotiate a collective bargaining agreement with a wage rate that was lower than the state's apprenticeship standard provided they obtained approval from the Division of Apprenticeship Standards before the new rate went into effect. Bechtel, 812 F.2d at 1222-24. The requirement of state approval caused the Bechtel court to conclude that § 212(c) effectively gave apprentices two bargaining representatives — the state and their union — in violation of the NLRA. Id. at 1224-25. In contrast, neither § 1777.5, the provision upheld in Dillingham II, nor § 208(c) requires California officials to approve collective bargaining wage rates before they go into effect. Both merely prohibit contractors, whether union or non-union, from paying registered apprentices below the apprenticeship minimum standards. The regulation is thus no more preempted than are state minimum wage laws generally.
 
 
 31
 Associated Builders' other Garmon preemption argument is that § 208(c) will force employers to renegotiate their collective bargaining agreements. According to Associated Builders, journeymen and apprentice wage rates are typically "directly related," and thus, by increasing wages for apprentices, § 208(c) will pressure contractors to renegotiate journeymen wages.[5] Although the Bechtel court discussed the effect that the regulations at issue might have on compensation rates generally, its holding turned on the fact that the state impermissibly interfered with the collective bargaining process, by becoming a participant. Bechtel, 812 F.2d at 1226; see also Dillingham II, 190 F.3d at 1040 (discussing Bechtel). No such state involvement occurs under § 208(c). Moreover, no state minimum wage statute would survive an NLRA preemption challenge if preemption would result whenever regulations setting the minimum wages of the lowest-paid workers might have the indirect effect of increasing the wages of workers in higher-paid classifications.
 
 
 32
 Associated Builders' other arguments apply the Machinists doctrine of NLRA preemption. In Dillingham II, we held that California's apprenticeship standards survived a Machinists challenge for two reasons — both of which are controlling here as well. First, the establishment of wage and benefit minimums for apprentices is not a policy area that Congress intended to leave unregulated. Dillingham II, 190 F.3d at 1038-39. Just two years after Congress passed the NLRA, it specifically established a federal-state partnership to regulate apprenticeship standards in the Fitzgerald Act. It would not have directed the Secretary of Labor "to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship," 29 U.S.C. § 50, if it had intended the NLRA to supplant the states' historic role in protecting apprentices.
 
 
 33
 Second, the regulations establish minimum labor standards for registered apprentices. 190 F.3d at 1039. Numerous state minimum labor standards have survived NLRA preemption challenges:
 
 
 34
 there is no suggestion in the legislative history of the Act that Congress intended to disturb the myriad state laws then in existence that set minimum labor standards, but were unrelated in any way to the processes of bargaining or self-organization.... States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.... [M]inimum and other wage laws ... are only a few examples.
 
 
 35
 Metropolitan Life Insurance Co. v. Commonwealth of Mass., 471 U.S. 724, 756, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (internal citations omitted); accord Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 21, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ("Both employers and employees come to the bargaining table with rights under state law that form a backdrop for their negotiations." (internal quotations omitted)). Relying on these decisions, we have declared that "state minimum benefit protections have repeatedly survived Machinists preemption challenges." National Broadcasting Co. v. Bradshaw, 70 F.3d 69, 71 (9th Cir.1995).
 
 
 36
 Specifically, the NLRA does not preempt state regulations that establish minimum wages, benefits, or other "[m]inimum state labor standards [that] affect union and non-union employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." Metropolitan Life, 471 U.S. at 755, 105 S.Ct. 2380. As we held in Dillingham II, California's apprenticeship regulatory scheme for public works does not encourage or discourage registered apprentices from exercising their NLRA-protected rights to organize and bargain collectively because it does not preclude efforts to negotiate or exert economic leverage to set a level of compensation above its minimum standards. 190 F.3d at 1040. California's apprenticeship standards target a vulnerable group of entry-level workers, establish a minimum wage package for their services (if they register with state-approved programs), and ensure that training and education are available so they can progress towards better paying and higher status jobs.
 
 
 37
 Attempting to distinguish Dillingham II, Associated Builders argues that § 208(c) does not meet the Supreme Court's requirement that minimum labor standards "affect union and non-union employees equally." Metropolitan Life, 471 U.S. at 755, 105 S.Ct. 2380; Fort Halifax, 482 U.S. at 22, 107 S.Ct. 2211; Livadas v. Bradshaw, 512 U.S. 107, 132 n. 26, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). The case before us raises a facial challenge. On its face, § 208(c) does not treat union and non-union employees differently. Rather, it affords every contractor the opportunity to establish a state-approved apprenticeship program and to hire registered apprentices, regardless of whether it has a collective bargaining agreement with a union.
 
 
 38
 Nonetheless, Associated Builders attempts to argue that, in practice, the regulatory scheme creates advantages for unionized employees because it allows their unions and employers to alter the state's wage packages. According to Associated Builders, unions and union employers can negotiate a lower or higher rate in their collective-bargaining agreements, which the Director of Industrial Relations will invariably adopt as the prevailing rate. Thus, Associated Builders asserts, union contractors can manipulate the state standards while non-union contractors are bound by wage packages that are effectively set by their union competitors.
 
 
 39
 Associated Builders' argument, in essence, is that California's process for setting the prevailing wage is unlawful under the NLRA because it allows unions and union employers, rather than the state, to determine the state-prescribed wage. This, however, is not an accurate characterization of how California determines the prevailing rate. California's Director of Industrial Relations is not permitted simply to accept a rate identified in a collective bargaining agreement as the prevailing rate. The Director must determine, first, whether a rate is "actually prevailing." Cal. Lab.Code § 1773; International Brotherhood of Electrical Workers v. Aubry, 41 Cal.App.4th 1632, 1636-39, 49 Cal.Rptr.2d 759 (1996); Independent Roofing Contractors v. Dep't of Indus. Relations, 23 Cal.App.4th 345, 355, 28 Cal. Rptr.2d 550 (1994). He does so by determining the rate actually paid to a majority of workers in the craft and locality. "If no single rate is being paid to a majority of the workers, then the single rate being paid to the greatest number of workers, or modal rate, is prevailing." Cal. Lab.Code § 1773.9.[6] A large non-union employer who pays all workers in a particular craft and location the same wage is just as likely to exert influence over the modal rate as a large union that negotiates a contract governing employment on numerous construction jobs. The determinative factor is the number of employees that a rate covers, not whether the employees are unionized.
 
 
 40
 Associated Builders' final Machinists argument stems from our holding in Chamber of Commerce v. Bragdon, 64 F.3d 497, 504 (9th Cir.1995) that Contra Costa County's prevailing wage ordinance was preempted. Although in Metropolitan Life, the Supreme Court determined that "[t]he NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions," 471 U.S. at 753, 105 S.Ct. 2380, Bragdon held that state substantive labor standards can be preempted in certain extreme situations, when they are "so restrictive as to virtually dictate the results" of collective bargaining. 64 F.3d at 501. Associated Builders argues that § 208(c) is as restrictive as the Contra Costa County ordinance. We disagree.
 
 
 41
 Bragdon must be interpreted in the context of Supreme Court authority and our other, more recent, rulings on NLRA preemption. While Bragdon emphasized that the Contra Costa County ordinance "targets particular workers in a particular industry," id. at 504, we have since explained on several occasions that the NLRA does not authorize us to pre-empt minimum labor standards simply because they are applicable only to particular workers in a particular industry. Dillingham II, 190 F.3d at 1034 (upholding minimum standards that applied only to apprentices in the skilled trades); National Broadcasting, 70 F.3d at 71-73 (holding that a California regulation that applied only to broadcast employees was not preempted); Viceroy Gold Corp. v. Aubry, 75 F.3d 482 (9th Cir.1996) (holding that a regulation that applied only to miners was not preempted). It is now clear in this Circuit that state substantive labor standards, including minimum wages, are not invalid simply because they apply to particular trades, professions, or job classifications rather than to the entire labor market.
 
 
 42
 Bragdon also emphasized that Contra Costa County established its prevailing wage rates under its regulatory, rather than its proprietary, authority. 64 F.3d at 501-02.[7] Although Dillingham II also dealt with prevailing wage rates established by a public entity pursuant to its regulatory authority, there are two salient distinctions between the regulations invalidated in Bragdon and those upheld in Dillingham II. The distinctions are controlling here.
 
 
 43
 First, as discussed above, Congress authorized states to establish apprenticeship standards and to regulate the conditions governing the implementation of apprenticeship programs, whether the apprentices were working on public or private projects. This long-standing federal-state partnership, which was recognized in Dillingham I and Dillingham II, differentiates California's apprenticeship regulations from the Contra Costa County ordinance at issue in Bragdon.
 
 
 44
 Second, and equally important, unlike in the case of the Contra Costa County ordinance at issue in Bragdon, here contractors may completely avoid the applicability of the California apprenticeship regulations. California contractors are, for example, under no obligation to hire apprentices from state-approved programs for private construction projects or for public projects in most circumstances. The Contra Costa scheme, in contrast, was applicable to all workers on private construction projects, and the employers were mandated to pay them all the prevailing wage rates.[8] In short, § 208(c), like the apprenticeship regulations for public works that were upheld in Dillingham II, is not so restrictive as to interfere with the collective-bargaining process.[9]
 
 
 45
 In sum, we conclude that § 208(c) is not preempted by the NLRA.
 
 III. CONCLUSION
 
 46
 For the foregoing reasons, we hold that California's apprenticeship regulations are not preempted by either ERISA or the NLRA. The judgment of the district court is
 
 
 47
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Similar to California's prevailing wage law, the federal Davis-Bacon Act allows public contractors on federal public works to pay apprentices who are enrolled in programs that meet standards promulgated under the Fitzgerald Act less than the prevailing journeyman wage. 40 U.S.C. § 276(a)See Dillingham I, 519 U.S. at 319-20, 117 S.Ct. 832 (noting this similarity).
 
 
 [2]
 For both public and private projects, apprentices' compensation packages may incorporate wages and benefits, 8 Cal.Code Regs. §§ 208, 16000
 
 
 [3]
 If the state has not yet determined a prevailing hourly compensation package and progression schedule in a particular craft or location, the regulation requires "a starting wage rate decided by the sponsoring program in consultation with and subject to the approval of the Chief [of the Division of Apprenticeship Standards] based on consideration of the minimum starting hourly wage package and wage package progression for apprentices in the most analogous occupations and geographic areas." 8 Cal.Code Regs. § 208(c)(2)
 
 
 [4]
 Associated Builders maintains that California's regulatory scheme compels contractors to employ registered apprentices on public works. This is contrary to the interpretation of § 1777.5 inDillingham I, which construed California's regulatory scheme to permit two options in most circumstances — either contractors hire registered apprentices and pay them the special apprenticeship rate or they hire whomever they wish and pay the prevailing journeyman wage. See Dillingham I, 519 U.S. at 320, 332, 117 S.Ct. 832; see also 8 Cal. Code Reg. § 230.1(a). We assume that the Supreme Court's description in Dillingham I is accurate because nothing in the record indicates any pertinent changes in the interim.
 
 
 [5]
 Regardless of its legal merit, this contention is not supported by the record. Even after the adoption of the 2002 amendments, 85 percent of state-approved apprenticeship programs, enrolling about 90 percent of all registered apprentices, already paid apprentices at a rate that is equal to or higher than the state minimum. Accordingly, it is unlikely that the regulation will force widespread renegotiation of contracts in order to conform with the amendments
 
 
 [6]
 If a modal rate cannot be determined, the Director of Industrial Relations establishes a rate by considering further data from labor unions, employers, and employers associations, as well as rates on federal projects in the nearest labor market area and wage surveysId.
 
 
 [7]
 Bragdon recognized that when a public entity sets prevailing wage rates on public projects pursuant to its authority as a market participant or as a proprietor, NLRA preemption analysis does not apply. Id.
 
 
 [8]
 In invalidating Contra Costa County'sprevailing wage ordinance, we carefully distinguished, for purposes of preemption, state-established minimum wage regulations, which we acknowledged to be lawful. Bragdon, 64 F.3d at 502.
 
 
 [9]
 Associated Builders also argues that § 208(c) is supported by tenuous reasons. Although theBragdon court questioned whether the county articulated public purposes that were sufficient to justify its ordinance, it nevertheless "proceed[ed] under the assumption" that it was within its legitimate police powers. 64 F.3d at 503. This result is consistent with the Supreme Court's mandate that "[i]n labor pre-emption cases, as in others under the Supremacy Clause, our office is not to pass on the reasonableness of state policy." Livadas, 512 U.S. at 120, 114 S.Ct. 2068.